IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIE MANZANARES,

    Plaintiff,

v.                                                                                                1:16-cv-1412-LF

NANCY A. BERRYHILL,[1]
Deputy Commissioner for Operations
of the Social Security Administration,

    Defendant.

## MEMORANDUM ORDER AND OPINION

THIS MATTER comes before the Court on plaintiff Marie Manzanares's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 14), which was fully briefed on September 15, 2017. Docs. 16, 20, 21. The parties consented to my entering final judgment in this case. Docs. 4, 6, 7. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in weighing the opinions of non-examining state agency psychologists Christal Janssen, Ph.D. and Carol Mohney, Ph.D. The Court therefore GRANTS Ms. Manzanares's motion and remands this case to the Commissioner for proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill, the Deputy Commissioner for Operations of the Social Security Administration, is automatically substituted for the former Acting Commissioner of the Social Security Administration, Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

2

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Manzanares, currently age 35, attended special education classes and graduated from high school. AR 231, 236.[4] She has worked as a server, cashier, salesperson, medical records clerk, and an apartment leasing agent AR 64–65, 236. Ms. Manzanares filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on August 6,

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 11-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

2012—alleging disability since July 17, 2012[5] due to bipolar disorder, depression, and attention deficit disorder ("ADD"). AR 195–210, 235. The Social Security Administration ("SSA") denied her claims initially on October 29, 2012. AR 122–28. The SSA denied her claims on reconsideration on March 25, 2013. AR 133–37. Ms. Manzanares requested a hearing before an ALJ. AR 138–40. On January 27, 2015, ALJ Ann Farris held a hearing. AR 35–69. ALJ Farris issued her unfavorable decision on May 26, 2015. AR 13–34.

The ALJ found that Ms. Manzanares was insured for disability benefits through March 31, 2016. AR 18. At step one, the ALJ found that Ms. Manzanares had not engaged in substantial, gainful activity since July 11, 2012, her alleged onset date. *Id*. Because Ms. Manzanares had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. AR 19. At step two, the ALJ found that Ms. Manzanares had the following severe impairments: bipolar disorder NOS ("not otherwise specified") and attention-deficit hyperactivity disorder ("ADHD"). *Id.* At step three, the ALJ found that none of Ms. Manzanares's impairments, alone or in combination, met or medically equaled a Listing. AR 19–21. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Manzanares's RFC. AR 21–27. The ALJ found that Ms. Manzanares

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can only make simple, work-related decisions with few workplace changes; she should not be required to have interactions with the general public; she should have only occasional and superficial interactions with co-workers; and she should not be required to work at a production pace (i.e., an assembly type job or tandem tasks).

---

[5] The SSA found that Ms. Manzanares had a "potential onset date" of July 11, 2012. AR 231. "A potential onset date may be "the same as, earlier, or later than the alleged onset date." POMS DI 25501.220, Potential Onset Date, available at https://secure.ssa.gov/apps10/poms.NSF/lnx/0425501220 (last visited July 17, 2018). The ALJ adopted the potential onset date as Ms. Manzanares's alleged onset date for both her DIB and SSI claims. AR 16.

4

AR 21.

At step four, the ALJ concluded that Ms. Manzanares was unable to perform her past relevant work as a medical records worker, cashier, leasing agent, or sales representative. AR 27. The ALJ found Ms. Manzanares was not disabled at step five, concluding that she still could perform jobs that exist in significant numbers in the national economy—such as addresser, shirt folder, and linen room attendant. AR 27–29.

Ms. Manzanares requested review by the Appeals Council. AR 12. On November 4, 2016, the Appeals Council denied the request for review. AR 1–4. Ms. Manzanares timely filed her appeal to this Court on December 29, 2016.[6] Doc. 1.

### IV. Ms. Manzanares's Claims

Ms. Manzanares raises three arguments for reversing and remanding this case: (1) the ALJ failed to provide legitimate reasons for rejecting the opinion of her treating psychiatrist, Dr. Roxana Raicu; (2) the ALJ failed to incorporate all of the moderate limitations opined by state agency non-examining psychologists Christal Janssen, Ph.D. and Carol Mohney, Ph.D.; and (3) the ALJ's step five finding is not supported by substantial evidence because she failed to conduct the analysis required in cases where the number of jobs available in the national economy is questionable. Doc. 14 at 12–23. Because the Court remands based on the ALJ's failure to properly analyze the opinions Drs. Janssen and Mohney, the Court does not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### V. The ALJ Erred in Failing to Either Incorporate, or Explain Why She Rejected, a Moderate Limitation Noted in the Medical Opinions of Drs. Janssen and Mohney.

---

[6] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. 404.981; *see also* AR 2.

Although an ALJ need not discuss every piece of evidence, the ALJ must discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[7] "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 ("It is the ALJ's duty to give consideration to all the medical opinions in the record," and to "discuss the weight he [or she] assigns to such opinions." (citing 20 C.F.R. §§ 404.1527(c), (e)(2)(ii), 416.927(c), (e)(2)(ii)).

---

[7] Rescinded by Federal Register Notice Vol. 82, No. 57, page 15263, effective March 27, 2017.

In 2007, the Tenth Circuit Court of Appeals decided two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, in *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir. 2007), the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians.[8]

---

[8] "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1. This means the ALJ must consider how the claimant's impairments affect his or her physical abilities, mental abilities, and other abilities. An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."). In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at*2. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

Ms. Manzanares argues that the ALJ impermissibly "picked and chose" from the moderate mental limitations in the opinions of Drs. Janssen and Mohney—incorporating "some of the limitations but not others into her RFC determination." Doc. 14 at 18. Ms. Manzanares argues that the ALJ erred by giving these opinions "significant weight," while ignoring some of the moderate limitations in Section I of their Mental Residual Functional Capacity assessments. *Id.* The Commissioner argues that the ALJ's RFC "fully accounted" for all of the moderate limitations found by Drs. Janssen and Mohney. Doc. 16 at 14. The Commissioner also argues that the ALJ's RFC was consistent with Drs. Janssen and Mohney's narrative conclusions, and suggests that the ALJ need only consider the doctors' "ultimate opinion[s] in Section III" of the MRFCAs. Doc. 16 at 14–15. I disagree with the Commissioner.[9]

An ALJ is required to consider and discuss both Section I and Section III findings. As the Honorable Stephan M. Vidmar thoroughly explained in his opinion rejecting similar arguments that an ALJ is not required to consider Section I findings, the Program Operations Manual System ("POMS"),[10] regulations, and case law require the ALJ to address all of a doctor's findings, not just those in Section III. *See Silva v. Colvin*, 203 F. Supp. 3d 1153, 1158–66 (D.N.M. 2016). An ALJ may rely exclusively on the Section III findings only if the "Section III narrative does not contradict any Section I limitations and describes the effect each

---

[9] I repeatedly have rejected the Commissioner's argument that the ALJ need only account for a doctor's Section III findings. *See, e.g.*, *Heckel v. Colvin*, No. 15cv453-LF, 2016 WL 9781164 (D.N.M. Sept. 28, 2016); *Martinez v. Colvin*, No. 15cv817-LF, 2016 WL 9774939 (D.N.M. Nov. 23, 2016); *Bennett v. Berryhill*, No. 16cv399-LF, 2017 WL 5612154 (D.N.M. Nov. 21, 2017); *Jones v. Berryhill*, No. 15cv842-LF, 2017 WL 3052748 (D.N.M. June 15, 2017); *Saavedra v. Berryhill*, No. 16cv822-LF, 2018 WL 324236 (D.N.M. Jan. 8, 2018); *Dorsainville v. Berryhill*, No. 16cv693-LF, 2018 WL 637393 (D.N.M. Jan. 31, 2018).

[10] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The Court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

Section I limitation would have on the claimant's mental RFC." *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (unpublished). The ALJ "should [not] turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III." *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished). If a doctor's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished).

Under *Haga* and *Frantz*, the ALJ has a duty to explain why she adopted some of Drs. Janssen and Mohney's limitations while rejecting others. When an ALJ relies solely on a doctor's Section III narrative, this Court must analyze whether the Section III narrative "adequately encapsulates" the moderate limitations in Section I of the doctor's opinion. *See Carver*, 600 F. App'x at 619. The Court must determine whether the ALJ adequately accounted for the limitations noted by Drs. Janssen and Mohney in the RFC assessment. If not, the Court must determine whether the ALJ adequately explained why she rejected the missing limitations.

In Section I of her October 29, 2012 MRFCA, Dr. Janssen found that Ms. Manzanares had the following limitations:

- Moderate limitation in the ability to carry out detailed instructions;
- Moderate limitation in the ability to maintain attention and concentration for extended periods;
- Moderate limitation in the ability to sustain an ordinary routine without special supervision;
- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- Moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Moderate limitation in the ability to respond appropriately to changes in the work setting;

9

- Moderate limitation in the ability to set realistic goals or make plans independently of others.

AR 78–79, 89–90.  Dr. Mohney found identical moderate limitations on reconsideration.  AR 104–05, 117–18.

In Section III of her MRFCA, Dr. Janssen found that Ms. Manzanares "appears able to perform simple/repetitive work with incidental interpersonal contact and direct/concrete supervision.  Unskilled."  AR 79, 90.  Dr. Mohney's Section III narrative contains an identical statement.  AR 105, 118.

The ALJ gave "significant weight" to the opinions of Drs. Janssen and Mohney.  AR 23.  However, in summarizing their opinions, the ALJ listed only their Section III findings that Ms. Manzanares was "able to perform simple/repetitive work with incidental interpersonal contact and direct/concrete supervision."  *Id*.  The ALJ did not discuss any of the moderate limitations the doctors included in Section I, nor did she discuss their conclusion that she was limited to unskilled work.  Thus, the Court must determine whether the doctors' Section III findings "adequately encapsulate" the limitations noted in Section I of their opinions.  *See Carver*, 600 F. App'x at 619.  The Court ultimately must determine whether the ALJ adequately incorporated, or explained why she rejected the moderate limitations in the opinions of Drs. Janssen and Mohney.

The Court will not address every moderate limitation in Drs. Janssen and Mohney's opinions that the ALJ may have failed to address, as remand is required if the ALJ failed to address even one moderate mental limitation, which she did.  Both Dr. Janssen and Dr. Mohney found that Ms. Manzanares had a moderate limitation in "the ability to accept instructions and respond appropriately to criticism from supervisors."  AR 78, 89, 105, 118.  This limitation is not encapsulated in the doctors' Section III summaries.  Drs. Janssen and Mohney did state in
10

Section III that Ms. Manzanares required "direct/concrete supervision." However, this Section III finding encapsulates the moderate limitation in Ms. Manzanares's "ability to sustain an ordinary routine without special supervision." AR 78, 89, 104, 117. It does not address Ms. Manzanares's ability to accept instructions and respond appropriately to criticism from supervisors. *See* Mental Residual Functional Capacity Assessment form SSA-4734-F4-SUP[11] (listing "the ability to accept instructions and respond appropriately to criticism from supervisors" in the category "Social Interaction," while listing the "ability to sustain an ordinary routine without special supervision" in the category "Sustained Concentration and Persistence"); *Chapo*, 682 F.3d at 1289–90 (dividing mental limitations into "categories of vocational significance" and finding that a limitation in "ability to accept instructions and respond appropriately to criticism from supervisors" goes in the category of "interaction with supervisors and coworkers" while a limitation in the "ability to sustain an ordinary routine without special supervision" goes in the category of "independent decision making/need for supervision"). Even if this Section III finding did encapsulate the Section I limitation, which the Court does not find, the ALJ did not include a limitation to "direct/concrete supervision" in Ms. Manzanares's RFC.

The Commissioner argues that some moderate mental limitations can be encapsulated by limiting a claimant to "unskilled work." Doc. 16 at 14 (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)). However, the ALJ did not limit Ms. Manzanares to "unskilled work." *See* AR 21. While Drs. Janssen and Mohney limited Ms. Manzanares to unskilled work in their Section III findings, AR 79, 90, 105, 118, the ALJ did not so limit her. Instead, the ALJ found that Ms. Manzanares had the RFC "to perform a full range of work at all exertional levels," but with the following specific nonexertional limitations:

- simple, work-related decisions;

---

[11] Available at www.ssaconnect.com/tfiles/SSA-4734-F4-SUP.pdf (last visited July 17, 2018).

- few workplace changes;
- should not be required to have interactions with the general public;
- should have only occasional and superficial interactions with co-workers;
- should not be required to work at a production pace (i.e., an assembly type job or tandem tasks).

AR 21. Because the ALJ did not limit Ms. Manzanares to "unskilled work," the Court need not analyze whether "unskilled work" encapsulates Ms. Manzanares's moderate mental limitations. *Vigil* is inapplicable. Instead, the crux of this case is whether the ALJ adequately addressed the moderate limitation in Ms. Manzanares's ability to interact with supervisors.

The ALJ did not adequately address Ms. Manzanares's limitation in her ability to interact with supervisors. The ALJ failed entirely to discuss this limitation, despite the record being replete with evidence of a limitation in this area. *See* AR 463 (consultative examiner Dr. Krueger opined that she had a "marked limitation in many relationships with coworkers, supervisors, and the general public"[12]); AR 78, 89, 104, 118 (Drs. Janssen and Mohney opined that she had a moderate limitation in the ability to "accept instructions and respond appropriately to criticism from supervisors"); AR 47 (Ms. Manzanares testified that she gets annoyed with people and "just want[s] to snap at them"); AR 57 (Ms. Manzanares testified that she has a hard time accepting criticism from coworkers and supervisors and that she "just want[s] to blow up on somebody"); AR 62 (Ms. Manzanares's mother testified that she "doesn't take criticism really well"). The ALJ did not point to any evidence contradicting the fact that Ms. Manzanares has at least a moderate impairment in this area.

---

[12] Although the ALJ gave "little weight" to Dr. Krueger's finding of a marked limitation in all areas of social interaction, the ALJ did not adequately explain what limitation, if any, she found in Ms. Manzanares's ability to interact with supervisors. AR 24. Elsewhere the ALJ stated she was "aware of the claimant's difficulties in dealing with the public and co-workers." AR 26. The RFC specifically addressed these limitations, but failed to discuss Ms. Manzanares's limitations in her ability to interact with supervisors.

The Commissioner argues that the ALJ "fully accounted" for Ms. Manzanares's "social interaction" limitations by limiting her "to only occasional, superficial interaction with coworkers and no contact with the public." Doc. 16 at 14. However, the Commissioner's argument, like the ALJ's RFC, does not account for Ms. Manzanares's other "social interaction" limitation—a limitation in her ability to interact with supervisors. Drs. Janssen and Mohney both found that Ms. Manzanares had a moderate limitation in the ability to "accept instructions and respond appropriately to criticism from supervisors." AR 78, 89, 104, 118. "[T]he ALJ did not state that any evidence conflicted with [the doctors'] opinion[s] or mental RFC assessment[s]. So it is simply unexplained why the ALJ adopted some of [the doctors'] restrictions but not others." *Haga*, 482 F.3d at 1208. The ALJ offers no explanation for why she rejected this limitation. Because the ALJ failed to explain why she rejected this limitation, remand is required. *Id*. On remand, the ALJ must "explain the evidentiary support for [her] RFC determination." *Id*.

## VI. Conclusion

The ALJ erred in failing to incorporate or explain why she rejected the moderate limitation in Ms. Manzanares's ability to interact with supervisors. The Court remands so that the ALJ can explain the evidentiary basis for her RFC determination.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 14) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent